The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support the findings of fact, conclusions of law, and ultimate award.
 **********
Accordingly, based upon the competent, credible, and convincing evidence adduced at the initial hearing, the undersigned make the following
 FINDINGS OF FACT
1. Plaintiff is a 23 year old female with a tenth grade education. At the time of the initial hearing, she had been employed at a kennel since October of 1996. She did not have an antecedent history of significant right shoulder problems prior to the date in question other than a singular episode of right shoulder pain as a result of an acute muscle strain sustained brushing her hair on October 4, 1994. This incident required her to be seen the following day by her family physician, Dr. Weber, who prescribed medication and heat as well as took her out of work that day. She subsequently recovered from the episode without any further shoulder problems.
2. In 1987, plaintiff became employed by defendant-employer as a cashier, which was her first public job. She subsequently worked there as a produce clerk, deli clerk, and baker, before being promoted to the night bakery supervisor's job, which she was doing when injured.
3. As a night bakery supervisor she was responsible for supervising the premises and the other bakery employees in their work. She was also responsible for filling in for the bakery employees when they were absent. That job, as well as her past experience working in the bakery, resulted in the plaintiff being familiar with all the jobs in the bakery. This familiarity extended to the job of donut fryer, which she was doing at the time of her injury. As a donut fryer, plaintiff had to do a lot of stretching and pulling as well as frequently lifting boxes in the twenty to fifty pound range. However, plaintiff is now unable to do that job because of the disabling right shoulder injury which she sustained on February 21, 1996.
4. As part of her duly assigned ordinary employment duties on February 21, 1996, plaintiff was required to fill in for the donut fryer, who was absent from work. At the time in question, she was involved in taking a twenty-five to thirty pound box of frozen croissants from the freezer to a table to thaw. Plaintiff contemplated setting the box of frozen croissants directly down on the table as she had always done before. In the process of doing so, however, she saw there was a large bakery tray already on the table. As there were no other empty tables available, she was required to reach over the bakery tray to set the box of frozen croissants down. In doing so she experienced the introduction of unusual conditions likely to result in unexpected consequences. This movement resulted in the disabling compensable strain of the rhomboid muscle of the right shoulder giving rise to this claim, which was manifested by acute right shoulder pain. Plaintiff initially attempted to continue working, but after ten to fifteen minutes, her pain was so bad she had to leave work and seek medical treatment. Prior to leaving, she advised her immediate supervisor of the shoulder injury. That same night she was seen at Rex Hospital's emergency room and was subsequently referred to Dr. George Charron, an orthopedic surgeon.
6. Two days later, plaintiff was seen by Dr. Charron, who prescribed a conservative course of treatment for her resulting rhomboid strain. This treatment consisted of multiple medications, physical therapy, trigger point injections and restricted activity. It further included taking her totally out of work for a couple of periods of time and restricting her to alternate light duty work the remainder of the time. Ultimately he referred her to Carolina Pain Consultants because of her incapacitating pain.
7. Plaintiff has neither reached maximum medical improvement and/or the end of the healing period from and following her right shoulder injury. Further, she is not able to return to her regular night bakery supervisor's job because of the stretching, pulling and lifting required. Other than the couple of periods when Dr. Charron took her totally out of work, plaintiff has remained capable of alternate lighter work, and on three occasions attempted to return to work for defendant-employer within her restrictions. However, her right shoulder injury forced her to stop working before completing each of the three days because the work provided was not suitable. Ultimately, she was required to seek alternate light duty work elsewhere, because defendant-employer indicated it would not allow her to return to work again until she was one hundred percent able to work without restrictions. Defendant-employer has since terminated plaintiff from its employ.
8. Although plaintiff had earlier begun looking for suitable alternate work on her own, it was not until on or about October 14, 1996, that she was finally able to obtain the job at the Randenn Kennel she was doing at the time of the initial hearing. The plaintiff's duties there included responsibility for cleaning cages, walking dogs, and feeding and medicating animals. These duties did not require the type of stretching and pulling or regularly lifting in the twenty to fifty pound range. Rather, she only had to lift a couple of animals of that weight and then only once a day.
At the kennel doing alternate lighter work, plaintiff was not able to earn the same wage she did working as defendant-employer's night bakery supervisor. Thus she is entitled to compensation for the resulting diminution in her wage earning capacity from the compensable right shoulder injury based on two-thirds of the difference between the $357.18 average weekly wage she was able to earn as a night bakery supervisor and the $178.09 average weekly wage she was able to earn at the kennel (based on the $3,658.66 she earned there during the period from October 14, 1996 to March 5, 1997, where she only worked an average of thirty hours a week and was paid $6.50 an hour or compensation at a rate of $118.73 per week).
9. During the periods from March 1, 1996 to March 3, 1996, from March 20, 1996 to April 18, 1996, and from April 19, 1996 to June 6, 1996, when she was out of work as a result of her right shoulder injury, and in the respective amounts of $94.18, $941.83 and $2,072.02, plaintiff received benefits under a non-contributory short term disability plan that defendant-employer provided for its employees, which were not due and payable under the Workers' Compensation Act, as the employer had denied the claim. Defendant thus is entitled to a credit against the following Award of temporary total disability benefits.
 **********
The foregoing stipulations and findings of fact engender the following
 CONCLUSIONS OF LAW
1. On February 21, 1996, plaintiff sustained an injury by accident arising out of and in the course of her employment resulting in the disabling right shoulder injury giving rise to this claim. N.C.G.S. § 97-26.
2. While plaintiff unsuccessfully attempted on three days to return to alternate lighter work for defendant-employer, the employer was unable to provide her with suitable work. Ultimately, she had to seek light duty work elsewhere after defendant-employer refused to provide suitable light duty work. Thus, with an exception of those three days, plaintiff was temporarily totally disabled from February 21, 1996 to October 14, 1996, when she was able to obtain alternate light duty work on her own at the kennel where she was working at the time of the initial hearing. Thus she is entitled to compensation at a rate of $238.13 per week during that period, subject to defendant-employer's credit for the benefits it paid under the non-contributory short term disability plan defendant-employer provided for its employees during the periods from March 1, 1996 to March 3, 1996, March 20, 1996 to April 18, 1996 and April 19, 1996 to June 6, 1996 and in the respective amounts of $94.18, $941.83 and $2,072.02, which were not due and payable under the Workers' Compensation Act because of defendant-employer's denial of the involved claim. N.C.G.S. § 97-29. N.C.G.S. §97-42.
3. Plaintiff has neither reached maximum medical improvement and/or the end of the healing period from and following her right shoulder injury. Further, she is not capable of returning to her regular night bakery supervisor's job. However, other than the periods when Dr. Charron took her totally out of work, she has remained capable of alternate light duty work since February 21, 1996. Defendant-employer has refused to provide suitable alternate light duty work, which forced plaintiff to find work herself, as she did on October 14, 1996 at the kennel at which she was still working at the time of initial hearing. At the kennel, she was unable to earn the same wage she did at her regular night bakery supervisor's job, entitling her to compensation for the resulting partial diminution in her wage earning capacity from the shoulder injury based on two-thirds of the difference between the $357.18 average weekly wage she was earning at the time of the same injury and the $178.09 average weekly wage she was able to earn performing alternate light duty work at the kennel. This compensation accrues at a rate of $118.73 from October 14, 1996 to the scheduled initial hearing date and thereafter and continuing at the same rate so long as she remains temporarily partially disabled, subject to a change of condition, medical or employment-wise.
 **********
The foregoing stipulations, findings of fact and conclusions of law engender the following
 AWARD
1. Defendant shall pay plaintiff, on account of her temporary total disability, compensation at a rate of $238.13 during the period from February 21, 1996 to October 14, 1996, less the three days in the interim when she unsuccessfully attempted to return to alternate lighter work for defendant-employer. Commencing as of October 14, 1996, defendant shall pay compensation at the rate of $118.73 on account of her resulting temporary partial disability from October 14, 1996, to the scheduled initial hearing date and thereafter continuing at the same rate so long as she remains partially disabled, subject to a change of condition, medical or employment-wise and/or to the 300 week limitation of N.C.G.S. § 97-30. Defendant shall receive a credit against the award of temporary total disability benefits for the benefits that plaintiff received under the non-contributory short term disability plan provided by defendant-employer in the amounts and periods shown in the above findings of fact and conclusions of law. Such compensation as has accrued shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of twenty-five percent of the net (after credit for the short term disability benefits) compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the Award and forwarded directly to counsel. For the balance of her fee, defendant shall forward every fourth compensation check payable directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendant shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendant-employer shall pay the costs, including as part thereof, the $275 expert witness fee previously awarded Dr. Charron for his deposition testimony to the extent the same has not already been paid. Plaintiff has moved, pursuant to N.C.G.S. § 97-88, for attorneys' fees to be assessed against defendant for fees incurred in defending this appeal to the Full Commission.
The Full Commission, in their discretion, HEREBY DENY this motion.
This case is HEREBY REMOVED from the Full Commission hearing docket.
This the __________day of __________________, 1998.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _____________________ RENEE C. RIGGSBEE COMMISSIONER
JHB/kws